WINDELS MARX LANE & MITTENDORF, LLP  Hearing date: January 12, 2011 @ 4:00 p.m.
*Attorneys for Alan Nisselson,*                              Objections: January 11, 2011 @ 5:00 p.m.
*Chapter 11 Trustee*
156 West 56th Street
New York, New York 10019
(212) 237-1000
Attorneys appearing:  Alan Nisselson (anisselson@windelsmarx.com)
                                    Leslie S. Barr (lbarr@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re                                                             <u>Chapter 11</u>

CPJFK, LLC,

                                                                    Case No. 110-50566 (CEC)

                                      Debtor.

**TRUSTEE'S MOTION FOR ORDER APPROVING SALE PROCEDURES AND TERMS**
**FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS,**
**SCHEDULING A HEARING FOR APPROVAL OF THE SALE, AND GRANTING**
**OTHER RELATED RELIEF**
_____

TO THE HONORABLE CARLA E. CRAIG,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

           Alan Nisselson ("**Trustee**"), trustee for the chapter 11 estate of CPJFK, LLC ("**Debtor**"),

by his undersigned counsel, respectfully represents:

**I.        Introduction; Relief Requested.**

           1.        By this Motion, the Trustee respectfully requests that the Court to consider the

entry of an order (the "**Sale Procedures Order**") approving procedures for the sale of

substantially all of the Debtor's assets pursuant to Court-approved Procedures described below

(the "**Sale**"), and scheduling a hearing to consider approving the Sale.  The proposed Sale

Procedures Order is attached as <u>Exhibit A</u>.

           2.        The Trustee believes the foregoing relief is in the best interests of the Debtor's

estate, all creditors and parties in interest.  As detailed below, the Debtor's business operations

have been reduced to pay ongoing administrative expenses on a current basis, but not accrued

administrative expenses.  Debt service to the secured lender is going unpaid and upcoming real estate taxes will not be paid due to insufficient funds.  Even after the Trustee has reduced expenses and sought to increase revenue, there is no realistic possibility of reorganizing the Debtor's business due to outstanding administrative expenses incurred while the Debtor was in possession and unpaid taxes, which are priority claims.  The sale of the Debtor's hotel and related assets, which will include the assumption and assignment of the ground lease, represents the most expedient way to end the monetary losses and maintain the possibility that the enterprise will continue to provide services and jobs to the immediate community.  The Motion should be granted.

## II.    Jurisdiction; Venue; Statutory Bases for Relief.

3.    The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the standing order titled *In the Matter of the Referral of Matters to the Bankruptcy Judges*, 69 B.R. 186 (E.D.N.Y. 1986) (Weinstein, C.J.).

4.    This is a core proceeding pursuant to 28 U.S.C § 157(b).  Venue of this case and proceeding is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409.

5.    The relief sought in this Motion is based upon sections 105(b)(1), 363 and 365 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6007, 9006(c), and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 6004-1(a) and the Court's Administrative Order No. 557 dated March 29, 2010 titled *In re Adoption of Sale Guidelines*.

## III.    Background.

### A.    Procedural Posture.

6.    On October 4, 2010 (the "**Petition Date**") the Debtor filed a voluntary petition for relief under chapter of the Bankruptcy Code 11 with the United States Bankruptcy Court for the

Northern District of Georgia (the "**Georgia Bankruptcy Court**").  The Debtor continued to operate its business as a debtor-in-possession pursuant to Bankruptcy Code §§1107 and 1108.

7.  On October 19, 2010, the U.S. Trustee for Region 21 filed a motion (the "Venue Transfer Motion") to transfer the Debtor's case to this Court.

8.  By Order dated November 9, 2010, the Georgia Bankruptcy Court entered the *Order Authorizing Limited Use of Cash Collateral for Interim Period*, which authorized the Debtor to use a limited amount of Cash Collateral in which Neshgold, LP ("**Neshgold**"), the Debtor's largest secured creditor, asserts an interest for an interim period extending through November 15, 2010 (the "First Interim Cash Collateral Order").  (Doc. No. 50).

9.  By Order dated November 9, 2010, the Debtor's case was transferred to this Court.  (Doc. No. 51).

10.  On November 12, 2010, Neshgold filed a motion pursuant to Bankruptcy Code § 1104(a) to appoint a chapter 11 trustee to operate the Debtor's business and administer the Debtor's estate. (Doc. No. 58).

11.  On November 19, 2010, the Court entered an Order directing the appointment of a chapter 11 trustee.  (Doc. No. 77).

12.  On November 23, 2010, the U.S. Trustee for Region 2 filed a Notice appointing Alan Nisselson as chapter 11 Trustee.  (Doc. No. 79).

13.  On November 23, 2010 (the "Appointment Date"), the U.S. Trustee filed an Application for an Order Approving the United States Trustee's Appointment of Chapter 11 Trustee. (Doc. No. 80).

14.  By Order dated November 24, 2010, the Trustee was appointed trustee for the Debtor's chapter 11 estate.  (Doc. No. 82).

15. No Official Committee of Unsecured Creditors has been appointed in this case.

16. Since shortly after his appointment, the Trustee has employed Choice Consultants LLC ("**Choice Consultants**") as his managing agent to operate the Debtor's business. The Trustee has filed with this Court an Application for the entry of an Order under Bankruptcy Code §§ 327(a) and 328 authorizing him to retain and employ Choice Consultants *Nunc Pro Tunc* to November 29, 2010. (Doc. No. 85). The Court granted the Trustee's Application to retain Choice Consultants at a hearing on January 5, 2011.

      **B.**       **The Debtor's Business and Assets and Significant Obligations.**

17. The Debtor's principal business is the ownership and operation of a 183 room hotel operating under the name of the "JFK Plaza Hotel" (the "**Hotel**") located at 151-20 Baisley Blvd., Jamaica, New York (the "**Property**"). The Hotel contains 183 rooms and formerly operated as the Crowne Plaza JFK Hotel until it lost its "flag", apparently for non-payment of franchise fees. The Hotel operations constitute the Debtor's sole source of income.

18. The Debtor does not own the Property on which the Hotel is located. Rather, the Property is leased from New Riviera Motel, LLC ("**New Riviera**") under a ground lease dated March 30, 2006 (as amended, the "**Ground Lease**"). The Ground Lease obligates the Debtor to pay $55,000 per month in ground rent. In addition, the Debtor is obligated to keep the Property insured and to pay as additional rent, all real estate taxes assessed against the Property, which aggregate approximately $850,000 annually, and to keep the Property free of Mechanic's Liens and other liens.

19. Prior to the filing of the Petition, the Debtor was in default under the Ground Lease. Trustee's appointment, the New Rivera asserts that the Debtor owes it at least three months' rent. In addition, as stated above real estate taxes that became due in January 2011 will not be paid due to insufficiency of funds.

20.     Neshgold also asserts very large claims as assignee of the Debtor's secured lender.  On March 31, 2006, Fortress Credit Funding III L.P., Fortress Credit Funding IV L.P. and Fortress Credit Opportunities I L.P. (collectively, "**Fortress**") as Lender and CPJFK as Borrower and the Debtor's principals Charles Morais and Sunil Mil as Guarantors, entered into a Leasehold Mortgage, Assignment of Rents, Security Agreement, Lockbox Agreement and related loan documents (collectively, "**Loan Documents**").  Pursuant to the Loan Documents, Fortress agreed to make two (2) loans to the Debtor in the total original aggregate principal amount of $9,750,000 (the "**Loans**").

21.     The Loans are secured by security interests in virtually all of the Debtor's assets including the Ground Lease, cash, accounts receivable, inventory, equipment, and general intangibles and other collateral as set forth in the Loan Documents.[1]

22.     On January 27, 2009 the Loan Documents were assigned to Neshgold.

23.     The Loan matured on March 31, 2009.  Neshgold asserts that as of the Petition Date, the outstanding indebtedness of the Debtor due and owing under the Loan Documents including interest, fees, costs and expenses aggregates the sum of $15,346,780.80 (together with any other sums that have or may become due to Neshgold under the Loan Documents and applicable law, the "**Neshgold Claim**").  According to Neshgold, that amount due is comprised of the original principal amount, unpaid interest and default interest, and protective advances for ground rent and real estate taxes in excess of $1,000,000.  The Debtor disputes that amount, and has advised the Trustee that the indebtedness is approximately $9 million.

24.     In addition to the obligations due and owing to New Riviera under the Ground Lease, and to Neshgold under the Loan Documents, the Debtor owes significant real property tax

---

[1] The Trustee is presently conducting an analysis of the validity, extent and priority of Neshgold's secured claim and liens.

obligations and sales tax obligations to the City and State of New York. As of the Petition Date, the real estate taxes due and owing were $442,952.92. An additional $419,156.48 is due in January 2011. The Debtor's sale tax and hotel occupancy tax obligations were scheduled at $1,913,376. In addition, the Debtor has incurred significant Mechanics' Liens against the Property, including a Mechanic's Lien in favor of Universal Pump and Motor Corp. in the amount of $250,000, which was filed against the Property on May 11, 2010.

25.     The Debtor's labor union has also asserted significant claims for unpaid obligations under the Debtor's collective bargaining agreement.

26.     Since his appointment, the Trustee and his professionals have operated the Hotel, and investigated the Debtor's history and financial affairs. In addition to reviewing the case docket and filings, the Trustee and his representatives have held meetings with the Debtor's principals and its lawyers, as well as with counsel for Neshgold, counsel for New Riviera, counsel for the union, and with brokers and an auctioneer. The Trustee and Choice Consultants have taken control of the Debtor's Property, inspected and run the Debtor's operations, reviewed its books and records, and interviewed the Debtor's employees. This Motion arises out of the analyses and conclusions drawn by the Trustee and his professionals. As detailed above, the Debtor's operations are not generating sufficient revenue to pay current administrative obligations, including debt service to Neshgold, rent for the Ground Lease and payments to the labor union. It is unlikely that the Trustee will be able to create sufficient revenue generation to repay Neshgold, New Riviera and other debts in a reasonable time. No further purpose can be served in maintaining the Debtor's operations for a prolonged period and incurring the extra cost and expense of seeking to reorganize the Debtor's business pursuant to a confirmed chapter 11 plan of reorganization. The Trustee strongly believes that the Debtor's Hotel and related assets must be sold as quickly as possible in order to reduce the administrative costs and preserve the

value of existing assets.

### IV. The Trustee Should be Authorized to Sell Substantially All of the Debtor's Assets.

#### A. Potential Offers; Assets to be Sold; Summary of the Terms of Sale.

27. Since his appointment, New Riviera has contacted the Trustee for the purpose of making an offer to acquire the Debtor's assets. In addition, Neshgold has made the prompt sale of the Debtor's Hotel and assets and its ability to credit bid for them a condition for its consent to the Trustee to use cash collateral to preserve value by maintaining the Hotel operations.[2] The Trustee and his professionals have analyzed those offers and conditions, discussed them with those interested parties, and decided that the prompt sale of the Hotel and assets is in the best interests of creditors and the estate.

28. The Debtor's assets to be sold comprise substantially all of the Debtor's assets, including the Hotel, the Ground Lease and all of the Debtor's machinery, equipment and inventory, office equipment, contract rights, licenses, permits, customer lists, telephone numbers, fax numbers, trademarks, trade names (subject to certain terms delineated below), assumed executory contracts and unexpired leases and any other assets not defined as "**Excluded Assets**" (the "**Assets**"). Because the Ground Lease is voluminous, it is not attached to this Motion, but copies may be obtained by request to the Trustee and his counsel at the address given for them below.

29. The Excluded Assets are:

    (a)    The Debtor's cash on hand and accounts receivable;

    (b)    Any equipment subject to lease obligations or any other secured claims that the lessor or secured creditor has not consented to sell;

    (c)    All other executory contracts and unexpired leases not included by the successful bidder in its bid for the Assets; and

---

[2] By separate motion, the Trustee has sought Court approval of a Second Interim Cash Collateral Order. [Doc. No. 116].

(d)     All causes of action belonging to the Debtor's bankruptcy estate under §§ 542 through 553 of the Bankruptcy Code ("**Causes of Action**").  The Causes of Action shall not include any Causes of Action or claims relating to the Assets, including but not limited to the Debtor's accounts receivable, or any Causes of Action previously assigned to Neshgold pursuant to Court Order.

30.     The Assets shall be sold "as is", "where is", and without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and regardless of any issues as to title, if any.

31.     The Trustee requests that all liens, claims, interests and encumbrances asserted against the Assets (the "**Encumbrances**") attach to the proceeds of Sale in the order and priority that they appear as of the Petition Date, subject to any defense, claim, counterclaim, set off or right of the Debtor's estate.

32.     The successful purchaser's obligation to close will be subject to the following conditions, in addition to the customary conditions in a "Section 363" sale, to be set forth in the Terms and Conditions of Sale:

(a)     Selection by the Trustee in his sole discretion and determination by the Court that the Purchaser's offer for the Assets is the highest or the best offer;

(b)     Entry of a Sale Approval Order (defined below); and

(c)     The sale approval order shall provide that (a) the sale is also free and clear of (i) any environmental, municipal or other government violations of any kind to the extent permitted in a section 363 Sale; or (ii) penalties and/or assessments previously issued against the Debtor, and (b) the ten day stay following entry of the Sale Approval Order shall be waived.

**B.     The Summary of the Terms of Sale.**

33.     The Trustee and Neshgold negotiated the provisions of a proposed Second Interim Cash Collateral Order, which is pending this Court's approval.  The proposed Second Interim Cash Collateral Order contains the salient terms and conditions by which the Trustee will conduct the Sale of the Debtor's Assets.

34.     The proposed Second Interim Cash Collateral Order requires that on or before March 15, 2011, the Trustee shall hold the Sale of the Debtor's Assets pursuant to Bankruptcy Code § 363(b), (d) and (f), through his proposed broker Optimum Hotel Brokerage ("**Optimum**"), with closing of the Sale to be held by no later than March 31, 2011 (the "**Closing**").  Under Bankruptcy Code § 363(f), the sale of the Debtor's Assets will be free and clear of all Encumbrances, with all Encumbrances to attach to the proceeds of the Sale to the same extent, and with the same validity, enforceability and priority that they had before the Petition Date, subject to all rights, claims and defenses that the Debtor and the estate had or may have.

35.     Neshgold, or its affiliate or its designee, may, in its sole discretion, pursuant to Bankruptcy Code § 363(k), credit bid at the Sale an amount up to the amount of its debt (the "**Neshgold Credit Bid Claim**"), representing that portion of the Neshgold Claim that is secured by the Debtor's Assets and is not disputed or questioned by the Trustee (without prejudice to Neshgold or any other entity bidding more than the amount of its allowed secured claim) by offsetting the amount of its bid against the purchase price for the Debtor's Assets.

36.     In the event Neshgold, or its affiliate or designee acquires title to the Debtor's Assets by bidding in all or part of Neshgold's Allowed Claim, then the Trustee shall promptly convey by bargain and sale deeds and/or bills of sale, as may be the case, without any representations, warranties or covenants to Neshgold all his interests in such Debtor's Assets.

37.     The Neshgold credit bids will be computed by the amount of outstanding debt owed to Neshgold as of the Sale Date plus Taxes and Interest and the Sale Cash Collateral Carve-Out (defined below).[3]  Neshgold shall not be responsible for any other costs and fees.

---

[3] If a Third Party acquires the Assets, the Sale Cash Collateral Carve Out will be paid to the Trustee from the Proceeds of the sale.  If Neshgold acquires the Assets through credit bid, Neshgold will deliver to the Trustee the Neshgold Sale Carve Out within three days after the Auction Sale Date.

38.     Regardless of whether Neshgold, or its affiliate or designee acquires the Debtor's Assets by credit bidding part or all of the Neshgold Credit Bid Claim, or whether a third party unrelated to Neshgold, or its affiliates or designees (a "**Third Party**") is the successful bidder and actually and timely closes on the sale of the Debtor's Assets, pursuant to the Second Interim Cash Collateral Order, Neshgold shall carve out for the benefit of the estate, from its first priority liens on the Debtor's Assets (the "**Sale Cash Collateral Carve Out**"), sums for the payment of commissions and expenses to the Trustee and Optimum, and for professional fees and expenses of the Trustee's Professionals (as defined in the Second Interim Cash Collateral Order). The Sale Cash Collateral Carve Out is in addition to the other carve outs provided for in the Second Interim Cash Collateral Order.

39.     The Trustee and Optimum believe these terms of sale to be fair and reasonable. Accordingly, the Trustee respectfully requests that the Sale for the Debtor's Assets be approved, but in no event after March 15, 2011, which is approximately eight weeks after the Hearing on this Motion. This will allow sufficient time to market the Debtor's Assets to achieve perhaps a better result for creditors.

**C.     Sale Procedures.**

40.     The Sale Procedures provide that the Debtor's Assets will be sold no later than March 15, 2010.

41.     From January 6 through February 14, 2011, Optimum will:

(a) Produce a marketing package for the Hotel;

(b) Identify and prequalify customers;

(c) Conduct print and electronic advertising campaigns;

(d) Promote the property at trade shows; and

(e) Respond to potential buyer contacts.

42.     From February 14 through February 28, 2011, Optimum will accept and respond to offers and leverage proposed offers to ensure highest value for the estate.

43.     From March 1 through March 15, 2011, Optimum will work with Trustee to obtain the highest offer for sale.

44.     Upon Court approval of the sale, Optimum will work with Trustee to close the sale.

45.     The Debtor's Assets will be sold to any party, including Neshgold (each, a "**Competing Offeror**"), who has made the highest offer or offers that complies with the following:

(a)     No property shall be deemed to be sold unless (i) the Bankruptcy Court has first entered an Order ("**Sale Approval Order**"), approving the Trustee's recommendations of the highest or best offer(s), and (ii) the closing of the transfer of title to any such property is in fact consummated.

(b)     Offers will (i) not be contingent upon financing to consummate a sale or to the outcome of unperformed due diligence, (ii) provide that the consideration to be paid under the offer shall be in cash or cash equivalent at closing, and (iii) provide for a closing no later than March 31, 2011, TIME BEING OF THE ESSENCE. The Trustee shall inform all Competing Offerors of his determinations of the highest or best offers for the Debtor's Assets.

(c)     Notwithstanding anything to the contrary contained herein, the Trustee reserves the right in his sole discretion to withdraw any or all of the Debtor's Assets from the Sale if the circumstances indicate that the Debtor's estate would benefit by such withdrawal(s).

(d)     Any Competing Offeror that in good faith requests of the Trustee in writing an opportunity to conduct due diligence to prepare and submit an offer, may be permitted upon reasonable notice, and at the Competing Offeror's sole risk, to have access to the Hotel and the Debtor's Assets during normal business hours, unless otherwise agreed.  Expenses incurred by a Competing Offeror concerning any due diligence, such as title reports or environmental inspections, shall be the sole responsibility of such Competing Offeror.

(e)     Any Competing Offeror shall deliver a certified check or bank check, letter of credit or other cash equivalent made payable to the Trustee in the amount equal to ten percent of the offer, which amount(s) shall serve as good faith deposit(s) against payment of the purchase price(s) by such Competing Offeror selected by the Trustee and found by the Bankruptcy Court to have made the highest or best offer(s) (each, a "**Highest Offeror**").  The Highest Offeror(s) shall deliver to the Trustee by certified check or bank check an amount equal to 10% of its successful offer (the "**Deposit**").

(f)     All offers shall remain irrevocably open and subject to acceptance by the Trustee until such time as determined by the Trustee, but no longer than until a closing takes place.  The Trustee will retain the Deposit made by any Competing Offeror made on all of the Debtor's Assets pending a closing.  Accordingly, if a closing with any Highest Offeror is not timely concluded, the Trustee shall be authorized without further Order of the Bankruptcy Court promptly to conclude the transactions with the next Highest Offeror in accordance with the terms of the next highest or best Competing Offer (provided the next highest or best Competing Bid otherwise complies with the Sale Approval Order).

(g)     The Sale Approval Order will direct any Highest Offeror to promptly close the transactions for the purchase of the Debtor's Assets for which such Highest Offeror made the highest or best Competing Offer(s).  Such closing date to be no later than March 31, 2011, TIME BEING OF THE ESSENCE.

(h)     In the event that any Highest Offeror fails to perform any obligation under its Agreements with the Trustee, if any, or the Sale Approval Order, which failure results in a failure to close the transactions contemplated thereby, such Highest Offeror shall forfeit to the Trustee the full amount of its Deposit.

(i)     The Sale Approval Order will provide that the Trustee will convey his rights and interests in and to the Debtor's Assets free and clear of all Encumbrances, unless otherwise agreed.  Any Highest Offeror will expressly acknowledge and agree that any warranties of any kind or nature whatsoever, express or implied, concerning the Properties including, without limitation, any warranties as to title, suitability for any purpose, merchantability and any other warranties or representations as to the ownership, physical condition, quality or quantity of them, will be expressly disclaimed.  Each Competitive Offeror will acknowledge and agree that it has inspected the Debtor's Assets and will accept them in their present condition at closing "AS IS," "WHERE IS," and "with all faults," and subject to all easements and covenants of record and that the quality of title to the Hotel shall be that which any reputable title insurance company doing business in State of New York is willing to insure.

(j)     By participating in the sale proceedings, each Offeror (i) acknowledges that it has or had an opportunity to review the Debtor's Assets and all other pertinent information concerning them, and (ii) represents that it has read the Sale

Procedures, and has the financial ability to pay the highest price it offers.

(k)    The Trustee has the right, in his sole discretion, to accept or reject any Offer, subject to the determination of the Court.

(l)    In the event that the Trustee, for any reason, does not consummate the sale or execute and deliver the closing documents, his sole liability to any Highest Offeror will be for the return of its Cash Deposit without interest.

(m)    Any leases encumbering any of the Debtor's Assets shall be terminated as of the Auction Sale, if not otherwise assumed and assigned.

(n)    The Highest Offeror shall pay any County, State, or other real property transfer taxes incurred by the transfer of the Debtor's Assets from the Estate to the Purchaser(s) at the Closing.

(o)    Upon approval of this Motion, the Court will schedule a hearing (the "**Sale Confirmation Hearing**") to be held by the Bankruptcy Court on a date that is convenient to the Court but not later than March 15, 2011, to enter the Sale Approval Order as may be acceptable to the parties, pursuant to Bankruptcy Code § 363, which order will, among other things, approve the Sale, confirm the purchaser is a good faith purchaser entitled to the protection of Bankruptcy Code § 363(m), provide that the Sale is free of all liens, claims, interests and encumbrances, and direct that the appropriate agencies that receive deeds for recording discharge all liens and encumbrances of record on the Debtor's Assets, and accept deeds from the Trustee to the successful offeror, for recording for all purposes, subject to payment of applicable Taxes or transfer fees, if any.

(p)    If the Sale to the Purchaser is terminated at or before the Closing Date, the Trustee will proceed to close the Sale with the next highest or best offer for the

Sale. Each offeror shall be required to leave its deposit with the Trustee until the Closing Date, at which time the deposit will be returned to such offeror with interest or investment income earned thereon, if any, if the Trustee closes with another offeror as provided herein; provided, however, that any offeror with whom the Trustee is entitled to close the Sale pursuant to this provision will forfeit its deposit (together with all interest or investment income earned thereon) to the Trustee as liquidated damages if such offeror is the highest or best offer for purposes of closing the Sale and such offeror fails to close the Sale for any reason other than as specified herein.

(q)     The Sale Approval Order shall direct that the Closing will occur on or before March 31, 2011, time being of the essence (unless the parties agree to extend that time) (the "**Closing Date**"), or dispense with the stay of closing under Bankruptcy Rule 6004(h).

(r)     The Sale Approval Order will provide that the Trustee will convey the estate's rights and interests in and to the Debtor's Assets, free and clear of all Encumbrances, unless otherwise agreed. Any Accepted Competing Bid will expressly acknowledge and agree that any warranties of any kind or nature whatsoever, express or implied, concerning the Debtor's Assets, including, without limitation, any warranties as to title, suitability for any purpose, merchantability and any other warranties or representations as to the ownership, physical condition, quality or quantity of them, are expressly disclaimed. Any purchaser pursuant to an Accepted Competing Bid will acknowledge and agree that it has inspected, or has had the opportunity to inspect, the Debtor's Assets and will accept them in their present condition at closing "as is," "where is," and

"with all faults".

46.    <u>Sale Under Bankruptcy Code § 363(b)(1)</u>.  The Trustee's proposed Sale of the Debtor's Assets under the sale terms meets the requirements of the Bankruptcy Code and the standards for approval of asset sales under the applicable rules and Administrative Order No. 557 of this Court.

47.    The Purchased Assets constitute property of the Debtor's estate under Bankruptcy Code § 541(a)(1) that the Trustee may use, sell or lease under Bankruptcy Code § 363. Bankruptcy Code § 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Bankruptcy Code § 105(a) provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  It has long been held in this Circuit that under appropriate circumstances, sale of substantially all of the debtor's assets is permitted pursuant to section 363 of the Bankruptcy Code.  *Comm. of Equity Sec. Holders. v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1071 (2d Cir. 1983).  A recent application of this holding is *In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009).

48.    In accordance with these well-established standards, the immediate approval of the proposed Sale is demonstrably the best way to maximize the value of these assets.  The sale procedures will allow the Trustee to preserve the Hotel's value as an operating entity so that potential buyers can acquire a 'turnkey' business.  If the proposed Sale and procedures are not approved, the Trustee will be unable to continue the Debtor's business operations pending the closing of a sale of the Assets, which will be rendered valueless.  The Trustee has demonstrated facts that support a finding that a sound business reason exists for the Sale.

49.    <u>Sale Free and Clear Under Section 363(f)</u>.  Bankruptcy Code § 363(f) provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if

> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(f) is written in the disjunctive. Thus, satisfaction of any of the five conditions is sufficient to sell property free and clear of liens. *In re Elliott*, 94 B.R. 343, 345 (Bankr. E.D. Pa 1988); *In re Red Oak Farms, Inc.*, 36 B.R. 856, 858 (Bankr. W.D. Mo. 1984).

50.    In this case, the Debtor's most significant secured creditor, Neshgold, has consented to the sale. Moreover, all existing Encumbrances upon the Assets will attach to the net proceeds of the sale, with the validity, enforceability and priority that they had before the Petition Date, and subject to any claim and defense that the Debtor's estate may possess. The Trustee accordingly requests that the Assets be transferred to a Highest Offeror making an accepted competing bid free and clear of all Encumbrances, with such Encumbrances to attach to the proceeds of the proposed sale to the extent and in the priority in which they existed before the sale.

51.    <u>Assumption and Assignment of Contracts and Leases</u>. The Sale terms provide that executory contracts and unexpired leases will be assumed and assigned to the extent that the bid of any Highest Offeror so requires. The Ground Lease represents the estate's most significant unexpired lease. To the extent that any Highest Offeror seeks to accept the assignment of any executory contracts and unexpired leases, the Trustee will (a) promptly cure all existing defaults under the agreement(s), <u>provided</u>, <u>however</u>, that the Highest Offeror

provides sufficient consideration to do so, and (b) provide adequate assurance that the Highest Offeror will perform under the terms of the agreement(s) to be assumed and assigned under Bankruptcy Code § 365.

     **D.    Extraordinary Sale Provisions**.

52.    <u>Use of Proceeds</u>.  The Trustee proposes to release sale proceeds on or after the closing without further Court order by the disposition to funds consistent with cash collateral order(s) entered by the Court and any provisions of the Bankruptcy Code.

53.    <u>Record Retention</u>.  The Trustee will retain the books and records of the Hotel to enable him to administer this bankruptcy case.

54.    <u>Relief from Bankruptcy Rule 6004(h)</u>.  The Sale Order seeks relief from the stay imposed by Bankruptcy Rule 6004(h), as the Second Interim Cash Collateral order only provides for the use of such collateral until such time as a sale of the assets has been effected (i.e., March 31, 2011).  Thus, no funds shall be available to operate the business in the interim and as the nature of the business is a Hotel, it is in the interests of the estate and any purchasers to keep the Hotel functioning as an on-going concern.

55.    <u>Notice</u>.  At a hearing held by the Court on January 5, 2011, the Court scheduled a hearing to consider this Motion for January 12, 2011 (the "**Hearing**").  Accordingly, on January 6, 2011, the Trustee caused copies of this Motion, together with the exhibit and notice of the Hearing to be served by overnight delivery service to the Debtor's attorneys, the Office of the U.S. Trustee, counsel for Neshgold, counsel for New Riviera, counsel for the Debtor's labor union, and counsel for the Debtor's former franchisor, and notice of this Motion to be served by regular mail to the remaining creditors, parties in interest and entities that filed notices of appearance.  In addition, the notice will be sent by Optimum for the Trustee to all parties who they believe may be interested in purchasing any or all of the Debtor's Assets.  The Trustee

submits that such notice complies with the applicable requirements of the Bankruptcy Code and Rules, including the notice requirements of Bankruptcy Rules 2002 and 6004, and respectfully submits that no other or further notice is necessary.

## V.    Waiver of Memorandum of Law

56.    The Trustee respectfully requests that the Court waive the requirement under Local Bankruptcy Rule 9013-1(b) for the filing of a memorandum of law in support of this motion because the points and authorities relied upon in support of this motion are set forth herein.

57.    No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order (i) authorizing the chapter 11 trustee to sell substantially all of the Debtor's assets on the terms and conditions detailed above, including approving the Sale Procedures, (ii) scheduling a further hearing for approval of the sale for a date not later than March 15, 2011 in order to minimize the accrual of administrative costs that may arise from operating the Debtor's business (or the loss of value of the Debtor's assets) until a closing of the Sale is consummated; and (iii) granting such other and further relief as is just.

Dated: New York, New York        Respectfully submitted,
       January 6, 2011

                                 WINDELS MARX LANE & MITTENDORF, LLP


                        By:    /s/ Alan Nisselson
                               Alan Nisselson (anisselson@windelsmarx.com)
                               156 West 56th Street
                               New York, New York 10019
                               (212) 237-1000

                               *Attorneys for Alan Nisselson, Chapter 11 Trustee of
                               CPJFK, LLC*

# List of Exhibits

Exhibit A                      Sale Procedures Order