WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 11 Trustee*
156 West 56th Street
New York, New York 10019
(212) 237-1000

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CPJFK, LLC,<br><br>　　　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 110-50566 (CEC) |

**ORDER APPROVING SALE PROCEDURES AND TERMS FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, SCHEDULING A HEARING FOR APPROVAL OF THE SALE, AND GRANTING OTHER RELATED RELIEF**

Upon the motion dated January 6, 2011 (the "**Motion**") of Alan Nisselson ("**Trustee**"), trustee for the chapter 11 estate of CPJFK, LLC (the "Debtor"), for entry of an Order pursuant to sections 102(i), 105(a), 363(b) and 365 of title 11, United States Code 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") for an Order Approving Sale Procedures and Terms for the Sale of Substantially All of the Debtor's Assets, Scheduling a Hearing for Approval of the Sale and Granting Other Related Relief (the "**Sale Procedures Motion**");

And at the hearing held in this case on January 5, 2011, the Court scheduled a hearing to consider this Motion for January 12, 2011 (the "**Hearing**");

And the Trustee having caused service of the Sale Procedures Motion and notice thereof to be filed with the Court and served upon the Debtor's counsel of record, all known creditors and parties in interest listed by the Debtor in this case, and the Office of the U.S. Trustee, as evidenced by the Affidavits of Service on file with the Court, and

such notice being due and sufficient notice of the Sale Procedures Motion and the Hearing;

And the Court having held the Hearing to consider the Sale Procedures Motion on January 12, 2011;

And upon all of the proceedings had before the Court and the representations and the record made in connection with the Sale Procedures Motion, and the Court having determined on the record of the Hearing that the relief sought in the Sale Procedures Motion should be granted in all respects as set forth below and any objections to the Sale Procedures Motion having been overruled except to the extent set forth in this Order; and good and sufficient cause appearing therefor, and after due deliberation;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the standing order titled *In the Matter of the Referral of Matters to the Bankruptcy Judges*, 69 B.R. 186 (E.D.N.Y. 1986) (Weinstein, C.J.). This is a core proceeding pursuant to 28 U.S.C § 157(b). Venue of this case and proceeding is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409. The statutory predicates for the relief sought in the Motion are based upon Bankruptcy Code §§ 102(1), 105(a), 363(b)(1) and (f), 365, Rules 2002, 6004, 6006, 9006(c) and 9007 of the Federal Rules of Bankruptcy Procedure, Rules 6004-1(a), 6006-1 and 9077-1(a) of the Local Rules for this Court, and the Court's Administrative Order 557. ~~This is a core proceeding pursuant to 28 U.S.C § 157(b).~~ *(CEC)*

B. For the reasons set forth in the Sale Procedures Motion, the Debtor's assets should be liquidated promptly in order to end the accrual of administrative debt

2

and maximize value for the benefit of the estate, creditors, and parties in interest.

C. Notice of the Sale Procedures Motion, the Hearing, and all proceedings thereon, as evidenced by the affidavit of service thereof filed with the Court, was proper and appropriate under the circumstances.

**NOW THEREFORE, based upon the Sale Procedures Motion, the foregoing findings and conclusions, and upon the record made before this Court at the Hearing, it is hereby ORDERED that:**

1. The Sale Procedures Motion is granted as set forth below

2. From January 6, 2011 through February 14, 2011, Optimum Hotel Brokerage ("**Optimum**") will:

    (a) Produce a marketing package for the Hotel;

    (b) Identify and prequalify potential buyers;

    (c) Conduct print and electronic advertising campaigns;

    (d) Promote the property at trade shows;

    (e) Respond to potential buyer contacts; and

    (f) Notify all potential buyers of the existence of the Industry Wide Agreement ("IWA") and the provisions of Bankruptcy Code § 1113.

3. From February 14, 2011 through February 28, 2001, Optimum will accept and respond to offers and leverage proposed offers to ensure highest or best value for the estate.

4. From March 1, 2011 through March 15, 2011 Optimum will work with Trustee to obtain the highest or best offer for sale.

5. Upon Court approval of the sale, Optimum will work with Trustee to close

the sale.

6. The Debtor's Assets *(as defined in the Motion) (CEC)* will be sold to any party (each, a "**Competing Offeror**"), who has made the highest or best offer or offers that complies with the following *(each, a "Competing Bid") (CEC)*:

(a) No property shall be deemed to be sold unless (i) the Bankruptcy Court has first entered an Order ("**Sale Approval Order**"), approving the Trustee's recommendations of the highest or best offer(s), and (ii) the closing of the transfer of title to any such property is in fact consummated.

(b) Offers will (i) not be contingent upon financing to consummate a sale or to the outcome of unperformed due diligence, (ii) provide that the consideration to be paid under the offer shall be in cash or cash equivalent at closing, and (iii) provide for a closing no later than March 31, 2011, TIME BEING OF THE ESSENCE. The Trustee shall inform all Competing Offerors of his determinations of the highest or best offers for the Debtor's Assets.

(c) Notwithstanding anything to the contrary contained herein, the Trustee reserves the right in his sole discretion to withdraw any or all of the Debtor's Assets from the Sale if the circumstances indicate that the Debtor's estate would benefit by such withdrawal(s).

(d) Any Competing Offeror that in good faith requests of the Trustee in writing an opportunity to conduct due diligence to prepare and submit an offer, may be permitted upon reasonable notice, and at the Competing Offeror's sole risk, to have access to the Hotel and the Debtor's Assets

during normal business hours, unless otherwise agreed. Expenses incurred by a Competing Offeror concerning any due diligence, such as title reports or environmental inspections, shall be the sole responsibility of such Competing Offeror.

(e) Any Competing Offeror (except Neshgold to the extent that it may credit bid) shall deliver a certified check or bank check, letter of credit or other cash equivalent made payable to the Trustee in the amount equal to ten percent of the offer, which amount(s) shall serve as good faith deposit(s) against payment of the purchase price(s) by such Competing Offeror selected by the Trustee and found by the Bankruptcy Court to have made the highest or best offer(s) (each, a "**Highest Offeror**"). The Highest Offeror(s) and <u>*the Competing Offeror selected by the Trustee and found by the Bankruptcy Court to have made the next highest or best offer(s) (the "*</u>Second Highest Offeror<u>*") (CEC)*</u> shall deliver to the Trustee by certified check or bank check an amount equal to 10% of its successful offer (the "**Deposit**").

(f) The <u>*Competing Bids of the* **(CEC)** Highest Offeror and Second Highest Offeror</u> shall remain irrevocably open and subject to acceptance by the Trustee until such time as determined by the Trustee, but no longer than until a closing takes place. The Trustee will retain the Deposit made by <u>the Highest Offeror and Second Highest</u> Offeror made on all of the Debtor's Assets pending a closing. Accordingly, if a closing with any Highest Offeror is not timely concluded, the Trustee shall be authorized

without further Order of the Bankruptcy Court promptly to conclude the transactions with the Second Highest Offeror in accordance with the terms of the next highest or best Competing Offer (provided the next highest or best Competing Bid otherwise complies with the Sale Approval Order).

(g) The Sale Approval Order will direct any Highest Offeror <u>or Second Highest Offeror, as the case may be</u>, to promptly close the transactions for the purchase of the Debtor's Assets for which such Highest Offeror of Second Highest Offeror, as the case may be, made the highest or best Competing Offer(s). Such closing date to be no later than March 31, 2011, TIME BEING OF THE ESSENCE.

(h) In the event that any Highest Offeror <u>or Second Highest Offeror, as the case may be</u>, fails to perform any obligation under its Agreements with the Trustee, if any, or the Sale Approval Order, which failure results in a failure to close the transactions contemplated thereby, such Offeror shall forfeit to the Trustee the full amount of its Deposit.

(i) The Sale Approval Order will provide that the Trustee will convey his rights and interests in and to the Debtor's Assets free and clear of all Encumbrances, unless otherwise agreed. Any Highest Offeror or Second Highest Offeror as the case may be will expressly acknowledge and agree that any warranties of any kind or nature whatsoever, express or implied, concerning the Properties including, without limitation, any warranties as to title, suitability for any purpose, merchantability and any other warranties or representations as to the ownership, physical condition,

quality or quantity of them, will be expressly disclaimed. Each Competitive Offeror will acknowledge and agree that it has inspected the Debtor's Assets and will accept them in their present condition at closing "AS IS," "WHERE IS," and "with all faults," and subject to all easements and covenants of record and that the quality of title to the Hotel shall be that which any reputable title insurance company doing business in State of New York is willing to insure.

(j) By participating in the sale proceedings, each Offeror (i) acknowledges that it has or had an opportunity to review the Debtor's Assets and all other pertinent information concerning them, (ii) represents that it has read the Sale Procedures, and has the financial ability to pay the highest price it offers, and (iii) shall be deemed expressly to acknowledge that it is aware of the IWA and that it shall assume the IWA unless and until it is modified or rejected by a final order of the Bankruptcy Court pursuant to Section 1113 of the Bankruptcy Code prior to closing of a sale of the Debtor's Assets.

(k) The Trustee has the right, in his sole discretion, to accept or reject any Offer, subject to the determination of the Court.

(l) In the event that the Trustee, for any reason, does not consummate the sale or execute and deliver the closing documents, his sole liability to any Highest Offeror or Second Highest Offeror, as the case may be, will be for the return of its ~~Cash~~ *(CEC)* Deposit without interest.

(m) Any leases encumbering any of the Debtor's Assets shall be terminated as

of the ~~Auction Sale~~ ***the date of entry of the Sale Approval Order (CEC)***, if not otherwise assumed and assigned.  Any lessor or party to an executory contract encumbering the Debtor's Assets shall be required to set forth in writing to the Trustee any amounts that are required under any lease or executory contract to be cured pursuant to Bankruptcy Code § 365(d) no later than February 21, 2011.

(n) The Highest Offeror shall pay any County, State, or other real property transfer taxes incurred by the transfer of the Debtor's Assets from the Estate to the Purchaser(s) at the Closing.

(o) A hearing (the "**Sale Confirmation Hearing**") will be held by the Bankruptcy Court on **March *23*, 2011 at 2:30 p.m., prevailing Eastern Time**, to ***consider entry of*** ~~enter~~ ***(CEC)*** the Sale Approval Order as may be acceptable to the parties, pursuant to Bankruptcy Code § 363, which order ~~will~~ ***may (CEC)***, among other things, approve the Sale, confirm the purchaser is a good faith purchaser entitled to the protection of Bankruptcy Code § 363(m), provide that the sale is free of all liens, claims, interests and encumbrances, and direct that the appropriate agencies that receive deeds for recording discharge all liens and encumbrances of record on the Debtor's Assets, and accept deeds from the Trustee to the successful offeror, for recording for all purposes, subject to payment of applicable Taxes or transfer fees, if any.

(p) If the Sale to the ~~Purchaser~~ ***Highest Offeror (CEC)*** is terminated at or before the Closing Date, the Trustee will proceed to close the Sale with the

Second Highest Offeror. Each offeror shall be required to leave its Deposit with the Trustee until the Closing Date, at which time the deposit will be returned to such offeror with interest or investment income earned thereon, if any, if the Trustee closes with another offeror as provided herein; <u>provided</u>, <u>however</u>, that any offeror with whom the Trustee is entitled to close the Sale pursuant to this provision will forfeit its deposit (together with all interest or investment income earned thereon) to the Trustee as liquidated damages if such offeror is the highest or best offer for purposes of closing the Sale and such offeror fails to close the Sale for any reason other than as specified herein.

(q) The Sale Approval Order shall direct that the Closing will occur on or before March 31, 2011, time being of the essence (unless the parties agree to extend that time) (the "**Closing Date**"), or dispense with the stay of closing under Bankruptcy Rule 6004(h). The Closing Date may be adjourned by the Trustee by motion upon good cause shown.

(r) The Sale Approval Order will provide that the Trustee will convey the estate's rights and interests in and to the Debtor's Assets, free and clear of all Encumbrances (as defined in the Motion), unless otherwise agreed. Any accepted Competing Bid will expressly acknowledge and agree that any warranties of any kind or nature whatsoever, express or implied, concerning the Debtor's Assets, including, without limitation, any warranties as to title, suitability for any purpose, merchantability and any other warranties or representations as to the ownership, physical condition,

quality or quantity of them, are expressly disclaimed. Any purchaser pursuant to an accepted Competing Bid will acknowledge and agree that it has inspected, or has had the opportunity to inspect, the Debtor's Assets and will accept them in their present condition at closing "as is," "where is," and "with all faults".

7. Sale Under Bankruptcy Code § 363(b)(1). ~~The~~ ***At the Sale Confirmation Hearing, the Court will decide whether the (CEC)*** Trustee's proposed Sale of the Debtor's Assets under the sale terms meets the requirements of the Bankruptcy Code and the standards for approval of asset sales under the applicable rules and Administrative Order No. 557 of this Court.

8. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.



**Dated: Brooklyn, New York**
**January 26, 2011**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**